# EXHIBIT A



# Commonwealth of Massachusetts

### DISTRICT COURT DEPARTMENT OF THE TRIAL COURT

#### AYER DIVISION
Middlesex, ss.

Telephone *978* 772-2100
**(978) 772-2100**

25 East Main Street • Ayer, Massachusetts 01432

**Patricia Silva**
_____
Plaintiff(s)

vs.

**Home Depot U.S.A., Inc.,**
**and Sedgwick Claims**
**Management Services, Inc.**
_____
Defendant(s)

Civil Action No. 1148___ CV 000507

## SUMMONS
(Rule 4)

To defendant **Home Depot U.S.A., Inc.,** of **2455 Paces Ferry Road NW, Atlanta, GA**

(name)                                                                 (address)

You are hereby summoned and required to serve upon **Alan D. Hoch** , plaintiff('s attorney), whose address is **106 Peabody Street, Groton, MA 01450** , a copy of your answer to the complaint which is herewith served upon you, within 20 days after service of this summons, exclusive of the day of service. You are also required to file your answer to the complaint in the office of the Clerk of this court either before service upon plaintiff('s attorney) or within 5 days thereafter. If you fail to meet the above requirements, judgement by default may be rendered against you for the relief demanded in the complaint. You need not appear personally in court to answer the complaint.

Unless otherwise provided by Rule(13a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will be barred from making such claim in any other action.

WITNESS, Peter J. Kilmartin, First Justice at Ayer, on **October 26, 2011**
_____
(date)

*Wendy A. Wilton*, Clerk Magistrate of said Ayer Division
........................................

Note:  (1)  When more than one defendant is involved, the names of all defendants should appear in the action. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

(2)  The number assigned to the complaint by the Clerk at commencement of the action should be affixed to this summons before it is served.

### RETURN OF SERVICE

On _____ I served a copy of the within summons, together with a copy of the complaint in this action,
       (date of service)

upon the within named defendant, in the following manner (see Rule 4(d) 1-5):

A true copy Attest: *John Cotter* (signature)

**Deputy Sheriff Suffolk County**  (name and title)

                                                           (address)

Note:  (1)  The person serving the process shall make proof of service thereof in writing to the court and to the party or his attorney, as the case may be, who has requested such service. Proof of service shall be made promptly and in any event within the same time during which the person served must respond to the process. Rule 4(f)

(2)  Please place date you make service on the defendant in the box on the copy served the defendant, on the original returned to the court and on the copy returned to the person requesting service or his attorney.

(3)  If service is made at last and usual place of abode, the officer shall forthwith mail first class a copy of the summons to such last and usual place of abode and shall set forth in the return the date of mailing and the address to which the summons was sent (G.L. c.223, sec. 31).

This form is prescribed by the Chief Justice of the District Courts. DCM-13.

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                              Ayer District Court
                                                           C.A. No. 1148CV000507

| | |
|---|---|
| Patricia Silva, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Home Depot U.S.A., Inc., and | ) |
| Sedgwick Claims Management | ) |
| Services, Inc., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT AND JURY DEMAND

NOW COMES the plaintiff, Patricia Silva, who avers and alleges as follows:

### Parties

1.      The plaintiff is a natural person who at all material times has resided at 27
Brookfield Drive, Groton, Middlesex County, Massachusetts.

2.      The defendant, Home Depot U.S.A., Inc. (hereinafter "Home Depot"), is a
Delaware corporation which sells home and building supplies and which maintains a
principal place of business located at 2455 Paces Ferry Road NW, Atlanta, Georgia. At
all times material hereto, Home Depot owned and maintained a store located at 701
Boston Post Road East, Marlboro, Massachusetts, and otherwise transacted business
within the Commonwealth of Massachusetts during the time period referenced in this
Complaint.

3.      The defendant, Sedgwick Claims Management Services, Inc. (hereinafter
"Sedgwick"), is an Illinois corporation which specializes in managing claims, including
personal injury claims, brought against its customers, one of whom is Home Depot.
Sedgwick's principal place of business is located at 1100 Ridgeway Loop Road,

Memphis, Tennessee. Sedgwick transacted business within the Commonwealth of
Massachusetts during the time period referenced in this Complaint.

## Jurisdiction and Venue

4.      Jurisdiction over the defendants is conferred by the Massachusetts Long Arm
Statute, M.G.L. c.223A, §3 in that the defendants transacted business in Massachusetts,
contracted to supply services or things in Massachusetts, caused tortious injury in
Massachusetts by an act or omission outside of Massachusetts, and/or caused tortious
injury in Massachusetts.

5.      Venue in this Court is appropriate pursuant to M.G.L. c.223, §2.

## Facts

6.      On July 6, 2010, at approximately 9:00 a.m., the plaintiff and a companion arrived
at the Home Depot Store in Marlboro, Massachusetts, to purchase supplies. Ms. Silva had
entered the store to a distance of approximately 20 feet when she turned to the right, at
which point she slipped on a liquid foreign substance believed to be water and fell to the
floor.

7.      At the time and place of the subject fall, the Home Depot floor was defective and
hazardous to business patrons such as the plaintiff. By reason of its location at the front
of the store, the presence of store greeters who would or should have observed the defect,
and the immediate appearance of store personnel after the plaintiff's fall, Home Depot
had actual and/or constructive notice of the defect on the floor of its store and negligently
failed for an unreasonably long period of time to either clean up the known defective
condition and/or failed to alert patrons such as the plaintiff of the dangerous and defective
condition of its floor, or cordon off the dangerous and defective area.

8.      The plaintiff remained on the floor for a period of time as she was not certain at
that point what had happened to her. As a result of the fall, Ms. Silva felt pain in her right
shoulder, her ribs, her right lower back, her neck, and in her groin area.

9.     The companion who accompanied the plaintiff into the Home Depot store saw at the time and place of the plaintiff's fall that there were drips and drops of water of various sizes down the main front aisle for a distance of at least 50 feet. It appeared to this individual that the drips were from a bucket or mop which had dripped.

10.     The Home Depot store manager was at the scene of the fall when the plaintiff fell. In fact, the store manager actually saw the plaintiff lying on the ground.

11.     The plaintiff's companion spoke to the Home Depot store manager after the plaintiff fell. The Home Depot store manager smirked and smiled to the plaintiff's companion as though the fall was a joke.

12.     After a while, the plaintiff got up and started to walk around the store briefly to assess the extent of her injuries. At that time, the plaintiff's pain worsened, at which point she approached the store manager to tell him that she needed to go to the hospital. He took some information from the plaintiff and said he was forwarding it to their insurance company.

13.     The plaintiff subsequently went to the emergency room at Marlborough Hospital, Marlborough, MA, where she spent the next several hours in great pain and distress.

14.     On July 14, 2010, the plaintiff went to her physician complaining of back pain, where it was noted she complained of back spasms up the right side of her back, along with right shoulder pain, right rib pain, and tingling in the front region of her right leg.

15.     On August 29, 2010, an MRI of the plaintiff's spine was performed at that time. The plaintiff suffered a left extraforaminal disc protrusion with disc material contacting the left L3 nerve root just beyond the neural foramen. At L4-5, there is a small centrally located disc herniation. At L5-S1, there is a small right paracentral disc herniation. The findings of two herniations and one protrusion are both definite and unequivocal. The injuries, pain, and suffering experienced by the plaintiff alleged above are attributable to the subject fall in the Marlboro, MA, Home Depot store on or about July 6, 2010.

16.     On information and belief, at the time and place of the plaintiff's fall at the subject Home Depot store, Home Depot was insured under one or more policies of insurance for accidents or injuries which occurred to patrons of Home Depot stores such as the plaintiff.

17.     Home Depot contracted with Sedgwick to manage, handle, and adjust personal injury claims which were covered under Home Depot's liability insurance policy or

policies. A contract between Home Depot and Sedgwick with respect to handling personal injury liability claims arising under home Depot's insurance policies was in effect at all times material to this lawsuit and remains in effect to this day.

18.     Sedgwick has engaged in the business of insurance within the meaning of M.G.L. c.93A, §§ 2, 9 and M.G.L. c.176D by performing acts typically performed by insurers, including but not limited to communicating with claimants or their counsel, collecting medical records and bills, investigating the facts and circumstances of personal injury claims, adjusting personal injury claims, and responding to demands made by claimants. Sedgwick performed all of the acts, listed above or otherwise, which are typically undertaken by insurers, with respect to the plaintiff's claim. All of Sedgwick's work with respect to the plaintiff's claim was done on behalf of Home Depot.

19.     After Sedgwick became involved in the claim, Sedgwick took the plaintiff's recorded statement. On October 14, 2010, Sedgwick received a request that Home Depot retain the store video footage taken on July 6, 2010 for possible use in connection with the plaintiff's claim. On October 18, 2010, Sedgwick stated in an email "We have checked for store video of the incident in question and none was found."

20.     The plaintiff had multiple conversations with one of the former Sedgwick adjusters assigned to this claim, a Mr. Sinclair. In each of those conversations, which occurred during the summer of 2010, Mr. Sinclair informed the plaintiff either that the manager did not have time to review the store video or that he refused to do so. Sedgwick's attempt to persuade the plaintiff that no store video exists is an act of bad faith made illegal pursuant to M.G.L. c.176D and which is an unfair or deceptive act or practice within the meaning of M.G.L. c.93A.

21.     On February 26, 2011, the plaintiff sent a demand letter with a complete demand package to Scott Cristiano, who was at least the second Sedgwick adjuster assigned to this claim. Subsequent to February 26, 2011, the plaintiff's claim was transferred to a Mary DeWitt at Sedgwick for handling. Subsequently, the claim was transferred from Mary Dewitt back to Scott Cristiano.

22.     On February 28, 2011, the plaintiff sent a copy of the demand package via email in a pdf format to Mr. Cristiano. Mr. Cristiano responded on March 8th that he needed more than two weeks to respond to the demand letter as requested because he had all-day seminars to attend "on Wednesday and Thursday". Mr. Cristiano asked for an additional

4

two weeks. The plaintiff offered to split the difference and get a response in three weeks.
Mr. Cristiano responded on March 8th, stating in an email to the plaintiff that "I will do
what I can to attempt to have a number for you by the end of next week. I can't guarantee
it, but I will try my best. I'll let you know if I foresee any hang-ups that might prevent
this as I get into the medical records. Sound good?"

23.     The plaintiff's response to Mr. Cristiano on March 8th was "Sounds good. If you
get jammed for time, there isn't much I can do on my end which would be helpful to you.
If you can keep me informed, I can relay your progress to the client and hopefully, that
will be enough. My issue here is I have a client who is anxious to get moving if our
negotiations are not fruitful, but I will do all I can on my end as I believe you are being
forthright with me. I appreciate your keeping me informed."

24.     Mr. Cristiano responded on March 8th again, stating "[s]ounds good.  I will be in
touch with you next week either way.  I'd much rather be working in my office on these
things rather than sitting in 2 straight days of meetings." On March 14th, Mr. Cristiano
stated that " I'll try to have something for you by weeks end.  I have to get authority
from my supervisor, but hopefully that won't cause much delay."

25.     On March 28th, more than 30 days after the demand letter was sent, the plaintiff
emailed Mr. Cristiano, stating "k]indly advise me whether you have responded to my
client's demand letter in the above matter." On March 29th, the plaintiff sent to Mr.
Cristiano via U.S. Mail, fax, and email a copy of the plaintiff's recent prescriptions
supplementing her claim. On March 31st, the plaintiff asked Mr. Cristiano in an email
what the status of his evaluation was. Mr. Cristiano's email system responded that he was
out of the office on March 31st. On April 4th, the plaintiff emailed Mr. Cristiano and
stated "Unfortunately, I have not heard from you for some in connection with the above
matter. Before the claim goes into suit, however, I now need to make a claim against
Sedgwick directly for unfair or deceptive acts or practices in connection with the claim
settlement process and go after both Sedgwick and Home Depot. You can expect a letter
from me shortly." On April 4th, a mere eight minutes after the above email was sent, Mr.
Cristiano finally responded and stated in an email to the plaintiff that "I am no longer
handling this file. The claim has been reassigned to Mary Dewitt. Ms. Dewitt can be
reached at the same number that you had for me. After further review, there were some

additional questions in regards to liability that were needing to be followed up on. We cannot extend an offer until all aspects of liability have been explored."

26.    Also on April 4,2011, the plaintiff responded to Mr. Cristiano and stated that "I had no knowledge of any new adjuster, nor do I have any knowledge of the particular questions the new adjuster needed to follow up on. If the new adjuster wants to contact me, she is free to do so. I am all done chasing down unresponsive Sedgwick adjusters."

27.    Sedgwick did not articulate what questions it had, and Sedgwick did not follow up on the allegedly unanswered liability questions or otherwise proceed to process the claim or the demand. If there were any doubt that Sedgwick was attempting to adjust the plaintiff's claim in good faith, all such doubt evaporated when Sedgwick transferred the file to Mary Dewitt, no less than the third adjuster to handle the plaintiff's claim.

28.    On April 5th, plaintiff tried to call Ms. DeWitt. However, Sedgwick's phone system did not have a Mary Dewitt in its database. The operator at Sedgwick  transferred plaintiff's call to a Garrett Kaplan, who was said to have responsibility for cases in Massachusetts. Plaintiff then emailed Mr. Kaplan on April 5th as follows: "As per my voicemail message to you a few minutes ago, I represent Patricia Silva in the above matter. Scott Cristiano said in a recent email to me he was no longer handling this claim and said that a Mary DeWitt was handling the claim. However, the automated Sedgwick phone system did not recognize a Mary DeWitt, so I called the operator, who likewise could not find a Mary DeWitt in the system. The operator transferred me to you based on the claim arising in Massachusetts. Kindly let me know if you are the person in charge of the above claim and if you are not, kindly tell me who is." The plaintiff never heard from Mr. Kaplan.

29.    Also on April 5th, plaintiff emailed Ms. Dewitt, stating "I represent Patricia Silva in the above matter. Kindly contact me at our convenience. Scott Cristiano said you are now handling this claim." Ms. DeWitt called the plaintiff on April 5th to say she was the new adjuster, not Garrett Kaplan.

30.    On April 6th, the plaintiff emailed Ms. DeWitt, stating "[a]s per our phone conversation yesterday, kindly contact me regarding this claim at your earliest convenience after you have reviewed it. The prior adjuster mentioned something vague about liability questions he had but he never articulated any such questions to me. I am concerned that this claim has now been transferred to three different adjusters with no

6

prior notice to me. Moreover, about 6 weeks has gone by without a response by Sedgwick Claims. While I am concerned with what is going on over there, I hope you get up to speed on this claim quickly and move forward. It is not my custom and practice to let demand letters sit unresponded to for an extended period of time but out of good will and a desire to give you time to do your job, I am willing to wait a short period of time. If you have questions about the claim, please get them to me promptly." On April 6th, the plaintiff received an auto-reply from Ms. DeWitt's email account which stated "I will be out of the office on April 7 & 8. I will return on April 11."

31.     On April 12th, the plaintiff emailed Ms. DeWitt, stating, "You are back in the office. Kindly advise me of the status of your evaluation. The client is tired of waiting and I am trying to be patient but all roads here are pointing to foot-dragging on the part of Sedgwick, which is a violation of M.G.L. c.176D, §3(9). That statute makes illegal unfair or deceptive acts or practices in the business of insurance, which Sedgwick is engaged in. I would much prefer to settle the client's claim with Home Depot through you, but the delays are not helpful and serve to add to my feeling that a proper resolution to my client's claims would come from a claim against Sedgwick for bad faith in the business of insurance and against Home Depot for personal injury. Any such claim against Sedgwick itself carries enormous potential exposure. [new paragraph] I am also of the opinion that Sedgwick's prior statement to the client and to me that there is no Home Depot video footage of the subject accident is untrue and fraudulent. It is difficult to believe there is no footage given where and when the subject fall occurred and the state of the surveillance system in place at the Marlboro, MA store. Putting that issue aside for the moment, if Sedgwick/ Home Depot wants to settle, now is the time. If not, I will send you a c.176D letter and go after both Sedgwick and Home Depot after the statutory period expires- I don't care at this point but I am giving amicable resolution one more try. I am not wasting any more of my time on this beyond reaching out to you now, as you apparently just inherited the claim and you are not responsible for the conduct which preceded your involvement in the claim. You are responsible now, though, so I need to hear from you."

32.     Sedgwick's adjusters continued with delay tactics from April of 2011 through June of 2011 and continuing.

33.     Sedgwick's tactic of repeatedly assigning and re-assigning the plaintiff's claim to different adjusters, failing to communicate with the plaintiff's counsel regarding the plaintiff's claim, refusing to communicate substantively with plaintiff's counsel at all over a period of over two months, as well as Sedgwick's failure to make a reasonable offer of settlement constitutes an unfair and deceptive act or practice as defined by M.G.L. c.93A, §2(a) and the regulations promulgated thereunder.

34.     Sedgwick's conduct as alleged herein is also a violation of M.G.L. c.176D, §3(9) and specifically a violation of the following sections of that statute:

> (b) Failing to acknowledge and act reasonably prompt upon communications with respect to claims arising under insurance policies
>
> (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information; and
>
> (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

35.     Sedgwick has repeatedly transferred responsibility for the plaintiff's claim to new adjusters. Sedgwick failed to articulate what questions it has as to liability which can be answered by the plaintiff. Sedgwick did not request any further information regarding the plaintiff's theory of liability or her damages. Sedgwick failed for a period of many months to communicate with the plaintiff in any way. Sedgwick's refusal and failure to communicate is wrongful and has the effect of insulating Home Depot from having to respond to or otherwise settle the plaintiff's claim. Sedgwick's failure to communicate has had the effect of illegally stalling the resolution of the plaintiff's claim, and it has also had the effect of forcing the plaintiff to make a demand on Sedgwick for violating M.G.L. c.176D, which is a violation of c.93A.

36.     On June 28, 2011, the plaintiff served a demand letter sent pursuant to the provisions of M.G.L. c.93A, and styled as such, and which contained the plaintiff's allegations concerning the violations of M.G.L. c.176D as alleged above, to Ms. Mary DeWitt at Sedgwick. The demand letter was sent certified mail, return receipt requested. A true and accurate copy of the demand letter is attached hereto and labeled as Exhibit 1.

37.     Sedgwick responded to the demand letter in a writing dated July 29, 2011. However, Sedgwick did not make a reasonable offer in response to the plaintiff's demand letter. Furthermore, Sedgwick failed to respond substantively to the allegations made

8

against Sedgwick concerning its handling of the plaintiff's personal injury claim against Home Depot.

## COUNT ONE
(Negligence- Home Depot)

38. The plaintiff hereby incorporates the allegations contained in paragraphs 1-37, inclusive, of the plaintiff's complaint as though each such allegation was fully set forth herein.

39. By reason of the defective and dangerous condition of its premises, the plaintiff was proximately caused to slip and fall on a foreign substance at Home Depot's store in Marlboro, Massachusetts, on or about July 6, 2010.

40. Home Depot had actual and/or constructive notice of the dangerous and defective condition of the floor at the store in question but negligently failed to properly maintain the condition of the floor at its premises, negligently failed to eliminate the defective condition, failed to warn patrons of the dangerous and defective condition, and negligently failed in its duty to render the premises safe for patrons of the store such as the plaintiff.

41. As a direct and proximate result of Home Depot's negligence and Home Depot's breach of its duty to maintain its premises in a reasonably safe condition, the plaintiff was caused to suffer physical harm and injuries, as well as pain and suffering and ongoing disability, from which she continues to suffer today, and has been caused to incur medical bills, expenses, and has suffered a loss of earning capacity.

## COUNT TWO
(c.93A/ c.176D claim- Sedgwick)

42. The plaintiff hereby incorporates the allegations contained in paragraphs 1-41, inclusive, of the plaintiff's complaint as though each such allegation was fully set forth herein.

43. By reason of the plaintiff's allegations as set forth herein, Sedgwick violated the provisions of M.G.L. c.176D, §3(9).

44.     By virtue of Sedgwick's violations of c.176D, Sedgwick violated the provisions of M.G.L. c.93A.

45.     Sedgwick's conduct as alleged herein was and is an unfair or deceptive act or practice within the meaning of c.93A.

46.     Sedgwick's conduct as alleged herein was willful or knowing and represented an intentional course of conduct designed to thwart, stall, and frustrate the plaintiff and otherwise delay the resolution of her personal injury claim as much as possible.

47.     Sedgwick's actions were made in bad faith with knowledge or reason to know that the acts and practices complained of by the plaintiff violated the provisions of M.G.L. c.93A, §§2,9

48.     As a proximate result of the conduct of Sedgwick as alleged herein, the plaintiff suffered money damages.

**WHEREFORE**, the plaintiff, Patricia Silva, requests that judgment enter in her favor against the defendants, that the damages be doubled or trebled as appropriate, that the plaintiff be awarded her costs and interest as provided by law, and that the plaintiff receive such other relief as is just, appropriate, and proper.

## REQUEST FOR JURY TRIAL

The plaintiff requests a trial by jury as to all issues so triable to a jury.

Respectfully submitted,
Patricia Silva,
by her attorney,

Alan D. Hoch
Alan D. Hoch, Esq.
BBO# 548645
106 Peabody Street
Groton, MA 01450
(978) 448-0409
(fax) (978) 448-3733
alan@alanhochlaw.com

Dated: October 25, 2011

10

# Alan D. Hoch

ATTORNEY AT LAW

106 Peabody Street
Groton, MA 01450
(978) 448-0409
Fax (978) 448-3733
Email: alan@alanhochlaw.com

**For Settlement Purposes Only**
**Via Certified Mail, Return Receipt Requested**
Certified Mail No. 7009 2250 0001 7989 5961

June 28, 2011

Ms. Mary DeWitt
Sedgwick CMS- The Home Depot Unit
P.O. Box 14451
Lexington, KY 40512-4451

Re: Patricia Silva
Your client: The Home Depot USA, Inc.
Sedgwick File No.: 20100783400
D/L: 7/6/2010

Dear Ms. DeWitt:

As you are aware, I represent Ms. Patricia Silva on account of the injuries she suffered on July 6, 2011, at the Home Depot store located in Marlboro, MA. Sedgwick CMS (hereinafter "Sedgwick") has engaged in the business of insurance within the meaning of M.G.L. c.93A, §§ 2, 9 and M.G.L. c.176D by performing acts typically performed by insurers, including but not limited to communicating with claimants, collecting medical records and bills, investigating the facts and circumstances of my client's claim, adjusting her claim, and responding to a claimant's demand. All of Sedgwick's work was done on behalf of Home Depot USA, Inc. Please consider this letter a written demand for relief pursuant to M.G.L. c.93A, §§ 2, 9 and M.G.L. c.176D.

As per my client's prior demand, on July 6, 2010, at approximately 9:00 a.m., my client and a companion named Gary Mercer arrived at the Home Depot Store in Marlboro, Massachusetts, to purchase supplies. Ms. Silva had entered the store to a distance of approximately 20 feet when she turned to the right, at which point she slipped on a foreign substance believed to be water and fell to the floor. She remained on the ground for up to several minutes as she was not certain at that point what had happened to her. As a result of the fall, Ms. Silva felt pain in her right shoulder, her ribs, her right lower back, her neck, and in her groin area. The store manager was at the scene of the fall. In fact, the store manager actually saw my client lying on the ground. Mr. Mercer saw my client fall, and after the fall, Mr. Mercer saw that there were drips and drops of water of various sizes down the main front aisle for a distance of at least 50 feet. It appeared to Mr. Mercer that the drips were from a bucket or mop which had dripped. The store manager was present when Ms. Silva fell, and Mr. Mercer spoke to him. Mr. Mercer reports that the store manager smirked and smiled to him (Mr. Mercer) as though the fall was a joke. Mr. Mercer is prepared to so testify if called upon to do so.

After your company became involved in the claim, Sedgwick took my client's recorded statement. My client is obviously to receive that statement if this matter goes into suit. On October 14, 2010, shortly after I became involved in the claim, I emailed Sedgwick with a request that your client retain the store video footage taken on July 6, 2010 for possible use in

connection with my client's claim. On October 18, 2010, Sedgwick emailed me back and stated "
We have checked for store video of the incident in question and none was found." That is
incorrect. Please be advised that Ms. Silva had multiple conversations with one of the former
adjusters assigned to this claim, a Mr. Sinclair. In each of those conversations, which occurred
during the summer of 2010, Mr. Sinclair informed my client either that the manager did not have
time to review the store video or that he refused to do so. Sedgwick's attempt to persuade my
client no video exists is an act of bad faith within the meaning of M.G.L. c.176D, §3(9).
Sedgwick's claim notes regarding this claim will/should disclose the date and time of these
conversations. I repeat my prior request that Sedgwick retain all such claim notes for possible
use later on. I have previously discussed the issue of spoliation of evidence with Sedgwick and
based upon Sedgwick's email to me dated October 18, 2010, that remains an issue in the claim.
Regardless, every one of Home Depot's stores has a camera at the entrance to the store, including
the Marlboro, MA, store. It is not credible for Sedgwick to state that Home Depot's surveillance
system neither records nor covers the area just inside the front entrance. As you will see by
reviewing the prior communications I had with your predecessors on this issue, in the event Ms.
Silva's claim is not amicably settled, the issue of the store video will be one prominent issue in
the case.

The presence of such a large amount of water at the front of the subject Home Depot
store, in the front main aisle, at a point in time when the manager of the store was present,
provides more than enough evidence to prove that Home Depot had the requisite notice of the
existence of the defect on the store floor prior to my client's fall. It is undisputed that no steps
had been taken to cordon off the area or otherwise keep customers from the danger posed by the
defect. The amount of water over such a long linear area and in a straight direction suggests that
it was a Home Depot employee who spilled the water, which may have been a mop and bucket.
Regardless, the presence of the store manager at the site of the spilled water at the time of the
accident is further evidence of Home Depot's notice of and failure to respond to the defective
premises Home Depot allowed to exist at its premises. Mr. Mercer's witnessing the store
manager smiling and smirking at the accident which befell Ms. Silva would lead a jury to believe
that the manager was more concerned with his personal amusement than he was with store
safety.

After a while, Ms. Silva got up and started to walk around the store briefly to assess the
extent of her injuries. She felt her pain had worsened, at which point she approached the store
manager to tell him that she needed to go to the hospital. He took some information from my
client and said he was forwarding it to their insurance company. Ms. Silva made her way to the
emergency room at Marlborough Hospital, Marlborough, MA, where she spent the next several
hours. The records from Marlboro Hospital reflect that Ms. Silva was in a lot of pain. She had a
headache and an abrasion on her elbow. She felt nauseous and she felt a tingling on the left side
of her face. She did not know whether her shoulder was dislocated or if she had broken one or
more ribs. Ms. Silva was unable to take deep breaths. She was even more concerned about her
back. Ms. Silva stated her pain was a 5-6 on the ten scale. X-rays of Ms. Silva's chest, right ribs,
right shoulder, and pelvis did not disclose the existence of any fractures. Ms. Silva was advised
to seek medical attention if the pain in any of the above-mentioned places increased. She was
advised to take Motrin and she was given a prescription for Percocet. A copy of the medical
records and bills from Marlboro Hospital were previously sent to Sedgwick. After a couple of
days of persistent pain after the accident, Ms. Silva contacted the ER physician, who stated the

pain would likely take time to improve. When the pain did not improve, Ms. Silva made an appointment to see her primary care physician ("PCP").

Please note that as recently as May 20, 2010, Ms. Silva had no musculoskeletal disorders at all and had not been seen for any such disorders by her PCP for years prior to the subject accident. In my prior demand letter to Sedgwick, I attached a copy of Ms. Silva's medical records from Acton Medical Associates, the review of which establishes a complete lack of prior orthopedic or neurological symptomatology . On July 14, 2010, Ms. Silva went to her PCP complaining of back pain, where it was noted she complained of back spasms up the right side of her back, along with right shoulder pain, right rib pain, and tingling in the front region of her right leg. Ms. Silva was advised to continue with the conservative treatments recommended thus far, including the use of Percocet. the assessment at the time of Ms. Silva's July 14th visit was muscle spasms of the back. When Ms. Silva's pain did not resolve, she was referred by Dr. Gorman at Acton Medical Associates for an MRI of her back, which was done at Insight . Imaging on August 29, 2010.

As you know from the Insight Imaging report dated/ transcribed on August 29, 2010, a copy of which was also sent to Sedgwick with my client's prior demand, an MRI of Ms. Silva's spine was performed at that time. The MRI discloses that at L3-4, Ms. Silva has a left extraforaminal disc protrusion with disc material contacting the left L3 nerve root just beyond the neural foramen. At L4-5, there is a small centrally located disc herniation. At L5-S1, there is a small right paracentral disc herniation. The findings of two herniations and one protrusion are both definite and unequivocal. Please note that the L4 nerve root services the front of the leg, a finding which is consistent with Ms. Silva's statement to her PCP on July 14th that she had a tingling sensation in the front of her right leg. Moreover, in light of Ms. Silva's prior medical history, there is no doubt the injuries to her spine are attributable to the subject fall in the Marlboro, MA, Home Depot store on July 6, 2010. The imaging study obviously dovetails with Ms. Silva's report that after the accident, by the end of the day she would drag her leg around. It felt double the weight. My client was also having severe lower back pain and pain in her groin. During many nights, Ms. Silva would toss and turn and was unable to get more than a 2-3 hour rest. The lack of sleep is documented in the physical therapy assessment record dated September 15th.

After she was advised she had herniated discs and a disc protrusion, Ms. Silva was referred to Concord Spinal Rehab Center ("CSRC") in Concord, MA. A copy of CSRC's records and bills were previously sent to Sedgwick as Exhibit 4. Ms. Silva began her course of therapy with CSRC on September 13, 2010, when she underwent an initial examination. At that time, she complained of right-sided leg pain, with numbness and tingling. Her pain was a 7 on the ten scale. At the time, Ms. Silva's lower lumbar region showed inflammation. As you can see from Dr. Drummond's initial report regarding Ms. Silva's September 13th visit, she had either moderate or severe pain in her lumbar region in all three planes of extension, flexion, and rotation. This affected just about all of her daily activities according to the functional rating index dated September 13, 2010. On or about September 16, 2010, Ms. Silva began her chiropractic treatments with Dr. Drummond and her physical therapy treatments with John Robinson. The daily progress forms reflect that my client was seen for both physical therapy (15 sessions) and 15 chiropractic treatments from September 15, 2010 through October 25, 2010. The purpose of the treatment was obviously to decrease pain, increase flexibility of the spine,

3

and increase abdominal stability. The records further reflect MS. Silva was in moderate to almost extreme amounts of pain when she began treatments with Dr. Drummond and for some time thereafter. By the third week of October, Ms. Silva's pain had gone from a 7-8 typically to a 4 on the 1-10 scale. In essence, Dr. Drummond performed chiropractic treatments and spinal decompression therapy over the course of two months, and also applied hydrotherapy and ice to the affected area. Ms. Silva is trying to learn how to control her pain, especially when it flares up.

Please be advised that Ms. Silva has had a series of spinal epidural steroid injections at the Lahey Spinal Clinic at Emerson Hospital in Concord, MA, in an attempt to heal via less invasive means and otherwise avoid the need for spinal surgery. A pain specialist named Dr James Spinnelli, whose address is 54 Baker Avenue, Concord, MA 01742, performed the injections. The first procedure occurred on April 20th and targeted the area at L4-5. The second procedure was on June 6th and targeted L5- S1. A third procedure is scheduled for June 29th. These procedures are painful and in the case of the June 6th procedure, it was especially painful. It is hoped the procedure performed on June 29th will be the third and final spinal epidural injection. I will get those records to you at the conclusion of her treatments in the hope she will be at an end result which does not require painful and risky spinal surgery. However, the presence or absence of Dr. Spinnelli's records does not mitigate or reduce Sedgwick's exposure for mishandling my client's claim and basically ignoring her for several months. As you know from my client's prior demand, her medical bills incurred on account of my client's fall at Home Depot, not including the bills from her recent therapy at the Lahey Spinal Clinic, total $5.832.28.

With respect to the communications between Sedgwick as Home Depot's insurance representative, and myself as Ms. Silva's representative, Sedgwick's lack of communication has been deplorable. On February 26, 2011, I sent a demand letter with a complete demand package to the prior adjuster at Sedgwick handling this claim, Scott Cristiano. Mr. Cristiano was the second adjuster assigned to this claim. You are the third. On February 28, 2011, I sent a copy of the demand package via email in a pdf format to Mr. Cristiano. Mr. Cristiano responded on March 8th that he needed more than two weeks to respond to the demand letter as requested because he had all-day seminars to attend "on Wednesday and Thursday". Mr. Cristiano asked for an additional two weeks. I offered to split the difference and get a response in three weeks. Mr. Cristiano responded on March 8th, stating in an email to me that "I will do what I can to attempt to have a number for you by the end of next week. I can't guarantee it, but I will try my best. I'll let you know if I foresee any hang-ups that might prevent this as I get into the medical records. Sound good?" My response to Mr. Cristiano on March 8th was "Sounds good. If you get jammed for time, there isn't much I can do on my end which would be helpful to you. If you can keep me informed, I can relay your progress to the client and hopefully, that will be enough. My issue here is I have a client who is anxious to get moving if our negotiations are not fruitful, but I will do all I can on my end as I believe you are being forthright with me. I appreciate your keeping me informed." Mr. Cristiano responded on March 8th again, stating "[s]ounds good. I will be in touch with you next week either way. I'd much rather be working in my office on these things rather than sitting in 2 straight days of meetings." On March 14th, Mr. Cristiano stated that " I'll try to have something for you by weeks end. I have to get authority from my supervisor, but hopefully that won't cause much delay."

On March 28th, more than 30 days after the demand letter was sent, I emailed Mr. Cristiano, stating "k]indly advise me whether you have responded to my client's demand letter in the above matter." On March 29th, I sent to Mr. Cristiano via U.S. Mail, fax, and email a copy of my client's recent prescriptions supplementing her claim. On March 31st, I asked Mr. Cristiano in an email what the status of his evaluation was. Mr. Cristiano's email system responded that he was out f the office on March 31st. On April 4th, I emailed Mr. Cristiano and stated "Unfortunately, I have not heard from you for some in connection with the above matter. Before the claim goes into suit, however, I now need to make a claim against Sedgwick directly for unfair or deceptive acts or practices in connection with the claim settlement process and go after both Sedgwick and Home Depot. You can expect a letter from me shortly." On April 4th, a mere eight minutes after my above email, Mr. Cristiano finally responded and stated in an email to me that "I am no longer handling this file. The claim has been reassigned to Mary Dewitt. Ms. Dewitt can be reached at the same number that you had for me. After further review, there were some additional questions in regards to liability that were needing to be followed up on. We cannot extend an offer until all aspects of liability have been explored." Also on April 4th, I responded to Mr. Cristiano and stated that "I had no knowledge of any new adjuster, nor do I have any knowledge of the particular questions the new adjuster needed to follow up on. If the new adjuster wants to contact me, she is free to do so. I am all done chasing down unresponsive Sedgwick adjusters." In point of fact, if Sedgwick or home Depot had lingering questions as to liability, those questions were properly directed to Home Depot, Sedgwick's client insured. Sedgwick did not indicate it ever had a problem communicating with its own insured or otherwise obtaining information from them. Moreover, Sedgwick did not articulate what questions it had and Sedgwick did not, as far as my client is aware, ever follow up on the allegedly unanswered liability questions or otherwise proceed to process the claim or the demand. If there were any doubt that Sedgwick was attempting to adjust my client's claim in good faith, all such doubt evaporated when Sedgwick transferred the file to you, the third adjuster to handle this file. It is apparent to my client that Sedgwick is just stringing her along.

On April 5th, I tried to call you. However, Sedgwick's phone system did not have a Mary Dewitt in its database. The operator at Sedgwick transferred my call to a Garrett Kaplan, who was said to have responsibility for cases in Massachusetts. I then emailed Mr. Kaplan on April 5th as follows: "As per my voicemail message to you a few minutes ago, I represent Patricia Silva in the above matter. Scott Cristiano said in a recent email to me he was no longer handling this claim and said that a Mary DeWitt was handling the claim. However, the automated Sedgwick phone system did not recognize a Mary DeWitt, so I called the operator, who likewise could not find a Mary DeWitt in the system. The operator transferred me to you based on the claim arising in Massachusetts. Kindly let me know if you are the person in charge of the above claim and if you are not, kindly tell me who is." I never heard from Mr. Kaplan. Also on April 5th, I emailed you, stating "I represent Patricia Silva in the above matter. Kindly contact me at our convenience. Scott Cristiano said you are now handling this claim." You called me on April 5th to say she was the new adjuster, not Kaplan. At the time, you sounded reasonable.

On April 6th, I emailed you, stating "[a]s per our phone conversation yesterday, Kindly contact me regarding this claim at your earliest convenience after you have reviewed it. The prior adjuster mentioned something vague about liability questions he had but he never articulated any such questions to me. I am concerned that this claim has now been transferred to three different

adjusters with no prior notice given to me. Moreover, about 6 weeks has gone by without a response by Sedgwick Claims. While I am concerned with what is going on over there, I hope you get up to speed on this claim quickly and move forward. It is not my custom and practice to let demand letters sit unresponded to for an extended period of time but out of good will and a desire to give you time to do your job, I am willing to wait a short period of time. If you have questions about the claim, please get them to me promptly." On April 6th, I received an auto-reply from your email, which stated "I will be out of the office on April 7 & 8..  I will return on April 11."

On April 12th, I emailed you, stating, "You are back in the office. Kindly advise me of the status of your evaluation. The client is tired of waiting and I am trying to be patient but all roads here are pointing to foot-dragging on the part of Sedgwick, which is a violation of M.G.L. c.176D, §3(9). That statute makes illegal unfair or deceptive acts or practices in the business of insurance, which Sedgwick is engaged in. I would much prefer to settle the client's claim with Home Depot through you, but the delays are not helpful and serve to add to my feeling that a proper resolution to my client's claims would come from a claim against Sedgwick for bad faith in the business of insurance and against Home Depot for personal injury. Any such claim against Sedgwick itself carries enormous potential exposure.  [new paragraph] I am also of the opinion that Sedgwick's prior statement to the client and to me that there is no Home Depot video footage of the subject accident is untrue and fraudulent. it is difficult to believe there is no footage given where and when the subject fall occurred and the state of the surveillance system in place at the Marlboro, MA store. Putting that issue aside for the moment, if Sedgwick/ Home Depot wants to settle, now is the time. If not, I will send you a c.176D letter and go after both Sedgwick and Home Depot after the statutory period expires- I don't care at this point but I am giving amicable resolution one more try. I am not wasting any more of my time on this beyond reaching out to you now, as you apparently just inherited the claim and you are not responsible for the conduct which preceded your involvement in the claim. You are responsible now, though, so I need to hear from you."

On April 13th, I emailed you after you left called me and left a brief, general voicemail message. My email stated  "I received your phone message from your call to me this afternoon when I returned from Court. I returned your call. In the greeting which I heard when I called you, I was informed that I had called Home Depot's Support Center in Atlanta, Georgia. Kindly call me back at the number below." Also on April 13th, your email system replied to me, stating " I will be out of the office on April 14 & 15. I will return the afternoon of April 18." On April 19th, I emailed you again, stating "This is yet another request for Sedgwick/ Home Depot to communicate with me in regards to Patricia Silva's claim. Your last auto-reply indicated you were out of the office on April 14 and 15, returning on April 18th. It is obviously April 19th. You called me on April 13th and left a message. I returned the call on April 13th but I have not heard from you." I never received a telephone call, email, or any other communication from you whatsoever.

Sedgwick's tactic of repeatedly reassigning this claim to different adjusters and failing to communicate with me regarding my client's claim is untenable and unfounded. Sedgwick's conduct in refusing to communicate with me at all over a period of over two months, as well as Sedgwick's failure to make a reasonable offer of settlement constitutes an unfair and deceptive act or practice as defined by G.L. c. 93A, § 2(a) and the regulations promulgated thereunder. It is

furthermore a violation of G.L. c. 176D, § 3 and specifically a violation of the following sections of that chapter:

> (b) Failing to acknowledge and act reasonably prompt upon communications with respect to claims arising under insurance policies
>
> ...
>
> (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information; and
>
> ...
>
> (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

Sedgwick has repeatedly transferred responsibility for this claim to new adjusters. Sedgwick has failed to articulate what questions it has as to liability which can be answered by my client. It is undisputed Sedgwick did not request any further information regarding my client's theory of liability or her damages. Sedgwick has now failed for over two months to communicate with me in any way. Sedgwick's refusal and failure to communicate is appalling and has the effect of insulating Home Depot from having to respond to or otherwise settle my client's claim. Sedgwick has neither admitted nor disputed liability on behalf of Home Depot, nor has Sedgwick made any offer of settlement. Sedgwick's failure to communicate has had the effect of illegally stalling the resolution of my client's claim, and it has also had the effect of forcing my client to make a demand on Sedgwick for violating c.176D, which is also a violation of c.93A.

As per the provisions of M.G.L. c.93A, §§2,9, my client hereby demands that Sedgwick honor my client's claim. My client's demand remains at $70,000.00. If a reasonable offer of settlement is not forthcoming within the next 30 days, my client will bring suit against both Sedgwick and Home Depot in Ayer District Court. My client's patience with Home Depot and Sedgwick is exhausted. My client will not tolerate any further delays. My client is nevertheless hopeful Sedgwick will finally step up and respond in a professional, business-like manner and resolve her claim. If Sedgwick fails to do so, my client will bring suit against both entities.

Thank you for your attention to this matter. Sedgwick's response is due within 30 days of your receipt of this letter. If a reasonable offer of settlement is not made within the statutory time period, Sedgwick may be held liable for up to three times my client's actual damages, plus attorney's fees, interest and costs, all as permitted under Massachusetts law.

Sincerely,

Alan D. Hoch

Cc: Client

7

**U.S. Postal Service**
**CERTIFIED MAIL. RECEIPT**
**(Domestic Mail Only; No Insurance Coverage Provided)**

For delivery information visit our website at www.usps.com

LEXINGTON KY 40512-4451 OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ - $0.64 | 0450 |
| Certified Fee | $2.85 | 03 |
| Return Receipt Fee (Endorsement Required) | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $5.79 | 06/28/2011 |

Sent To
Ms. Mary DeWitt, Sedgwick CMS-Home Depot Unit

Street, Apt. No.;
or PO Box No.
P.O. Box 14451

City, State, ZIP+4
Lexington, KY 40512-4451

PS Form 3800, August 2006 — See Reverse for Instructions

7009 7989 0001 2250 5961

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Ms. Mary DeWitt       Unit
Sedgwick CMS-The Home Depot,
P.O. Box 14451
Lexington, KY 40512-4451

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   CODY WILLIS
   X                                 ☐ Agent
                                     ☐ Addressee

B. Received by ( Printed Name )      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

   LEXINGTON KY MAI...
   JUL - 5 2011
   USPS

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number:
   (Transfer from service label)    7009 2250 0001 7989 5961

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540



**ATTORNEYS AT LAW**

695 ATLANTIC AVENUE
BOSTON, MA 02111
(617) 451.2000 TEL
(617) 451.5775 FAX
www.BSCtrialattorneys.com

**BOYLE, SHAUGHNESSY & CAMPO, P.C.**

*Boston, MA - Manchester, NH - Providence, RI - Hartford, CT - Portland, ME*

PETER L. BOSSE - *Shareholder*
pbosse@BSCtrialattorneys.com

November 18, 2011

Civil Clerk's Office
Ayer District Court
25 East Main Street
Ayer, MA  01432

RE:   Patricia Silva v. Home Depot USA, Inc. and Sedgwick Claims Management Services, Inc.
      **C.A. No.: 2011-48-CV-000507**
      Our File No.: HD1-1107

Dear Sir/Madam:

      Enclosed for docketing/filing in the above-referenced matter, please find the following:

1.      Answer of the Defendant, Home Depot USA, Inc., to the Complaint and Jury Demand
      of the Plaintiff, Patricia Silva; and

2.      Certificate of Service.

      Thank you for your attention to this matter.

                           Very truly yours,

                           Peter L. Bosse

PLB/kmn
Enclosures
cc:    Alan D. Hoch, Esq.
       Mary DeWitt, Sedgwick CMS, Inc.
W:\Cases\1107\Corres\2011\CT Answer en 11-18-11.doc

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                    AYER DISTRICT COURT
                                                  C.A. NO.: 2011-48-CV-000507

| | |
|---|---|
| PATRICIA SILVA | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| HOME DEPOT USA, INC. AND SEDGWICK | ) |
| CLAIMS MANAGEMENT SERVICES, INC. | ) |
|     Defendants | ) |

**ANSWER OF THE DEFENDANT, HOME DEPOT USA, INC., TO THE
COMPLAINT AND JURY DEMAND OF THE PLAINTIFF, PATRICIA SILVA**

FIRST DEFENSE

The Defendant, Home Depot USA, Inc., answers the separately numbered paragraphs of

the *Complaint and Jury Demand* of the Plaintiff as follows:

**Parties**

1.      The defendant is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in this paragraph.

2.      The defendant admits the allegations contained in this paragraph as to its principal

place of business and that it transacts business within the Commonwealth but at this point, the

defendant is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations contained in this paragraph.

3.      The defendant is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in this paragraph.

**Jurisdiction and Venue**

4.      The defendant denies the allegations contained in this paragraph.

5.      The defendant denies the allegations contained in this paragraph.

**Facts**

6.    The defendant denies the allegations contained in this paragraph.

7.    The defendant denies the allegations contained in this paragraph.

8.    The defendant denies the allegations contained in this paragraph.

9.    The defendant denies the allegations contained in this paragraph.

10.    The defendant denies the allegations contained in this paragraph.

11.    The defendant denies the allegations contained in this paragraph.

12.    The defendant denies the allegations contained in this paragraph.

13.    The defendant denies the allegations contained in this paragraph.

14.    The defendant denies the allegations contained in this paragraph.

15.    The defendant denies the allegations contained in this paragraph.

16.    The defendant denies the allegations contained in this paragraph.

17.    The defendant denies the allegations contained in this paragraph.

18.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

19.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

20.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

21.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

22.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

23.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

24.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

25.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

26.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

27.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

28.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

29.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

30.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

31.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

32.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

33.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

34.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

35.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

36.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

37.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant, they are hereby expressly denied.

## COUNT ONE
### (Negligence - Home Depot)

38.    The defendant's answers to paragraphs 1 through 37 are repeated, reasserted and incorporated herein by reference.

39.    The defendant denies the allegations contained in this paragraph.

40.    The defendant denies the allegations contained in this paragraph.

41.    The defendant denies the allegations contained in this paragraph.

## COUNT TWO
### (c. 93A/c. 176D claim - Sedgwick)

42.    The defendant's answers to paragraphs 1 through 41 are repeated, reasserted and incorporated herein by reference.

43.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant they are hereby expressly denied.

44.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant they are hereby expressly denied.

45.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant they are hereby expressly denied.

46.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant they are hereby expressly denied.

47.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant they are hereby expressly denied.

48.    The defendant makes no answer to the allegations contained in this paragraph as they do not purport to state a claim against the defendant, Home Depot USA, Inc. To the extent that they do state a claim against the defendant they are hereby expressly denied.

## SECOND DEFENSE

The plaintiff was more than 50% at fault in causing the alleged injuries and, therefore, is barred from recovery by the comparative negligence statute, G.L. c. 231, sec. 85.

## THIRD DEFENSE

If the plaintiff is entitled to recover against the defendant any such recovery must be reduced in accordance with the comparative negligence statute, G.L. c. 231, sec. 85, since the negligence of the plaintiff was the proximate cause of the injuries allegedly sustained.

## FOURTH DEFENSE

The Complaint should be dismissed pursuant to Mass. R. Civ. P. 12(b)(4) for insufficiency of process.

## FIFTH DEFENSE

The Complaint should be dismissed pursuant to Mass. R. Civ. P. 12(b)(5) for insufficiency of service of process.

## SIXTH DEFENSE

The Complaint fails to state a claim against the defendant upon which relief can be granted and, therefore, the Complaint should be dismissed pursuant to Mass. R. Civ. P. 12(b)(6).

## SEVENTH DEFENSE

This action is barred by operation of the applicable statute of limitations.

## EIGHTH DEFENSE

The acts or omissions which are alleged to have caused the damages and/or injuries referred to in the Complaint were committed by a third party who was not an agent or employee of the defendant and for whose acts or omissions the defendant is not legally responsible.

### NINTH DEFENSE

The plaintiff has failed to comply with the notice requirements of G.L. c. 93A and, therefore, the Complaint should be dismissed.

### TENTH DEFENSE

The Complaint should be dismissed pursuant to Mass. R. Civ. P. 12(b)(3) for improper venue.

### ELEVENTH DEFENSE

Count Two of the Complaint as to the defendant, Home Depot USA, Inc., fails to state a claim against the defendant upon which relief can be granted, as Home Depot USA, Inc. is not an insuring entity subject to the standards imposed by G.L. c. 176D, thus Count II should be dismissed pursuant to Mass. R. Civ. P. 12(b)(6).

### TWELFTH DEFENSE

Count Two of the Complaint should be dismissed as to the defendant, Home Depot USA, Inc., as it fails to state a claim against the defendant upon which relief can be granted, as the Complaint fails to state any actions taken by the defendant in the course of trade or commerce pursuant to G.L. c. 93A, thus the Complaint should be dismissed pursuant to Mass. R. Civ. P. 12(b)(6).

### THIRTEETH DEFENSE

The plaintiff has failed to mitigate, minimize or avoid the damages, if any, alleged in the plaintiff's Complaint; accordingly, any recovery must be reduced by the amount of damages resulting from such failure.

### FOURTEETH DEEFNSE

The matter should be dismissed as there is no reasonable likelihood that the plaintiff will recover less than $25,000.00, pursuant to Mass. R. Civ. P. 12(b)(10).

WHEREFORE, the Defendant demands that this action be dismissed and that judgment enter in the Defendant's favor together with costs.

**THE DEFENDANT DEMANDS A TRIAL BY JURY.**

THE DEFENDANT,
HOME DEPOT USA, INC.,
BY ITS ATTORNEY,

DATED: 11/18/2011

Peter L. Bosse, BBO# 633453
Email: pbosse@BSCtrialattorneys.com
Boyle, Shaughnessy & Campo, P.C.
695 Atlantic Avenue
Boston, MA 02111
Phone: (617) 451-2000
Fax: (617) 451-5775

CERTIFICATE OF SERVICE

Pursuant to Mass. R. Civ. P. 5(a) and/or Sup. Ct. R. 9A, I, Peter L. Bosse, do hereby certify

that a copy of the foregoing document has been served first-class mail postage prepaid on all parties

or their representatives in this action as listed below:

**Counsel for Plaintiff, Patricia Silva**
Alan D. Hoch, Esq.
Law Offices of Alan David Hoch
106 Peabody Street
Groton, MA  01450

**Counsel for Defendant,**
**Sedgwick Claims Management Services, Inc.:**
Mary DeWitt
Sedgwick Claims Management Services, Inc.
P.O. Box 14451
Lexington, KY  40512-4451

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _15_ DAY OF

_Novem_____, 2011.

Peter L. Bosse, BBO# 633453
Email: pbosse@BSCtrialattorneys.com
Boyle, Shaughnessy & Campo, P.C.
695 Atlantic Avenue
Boston, MA  02111
Phone: (617) 451-2000
Fax: (617) 451-5775