UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PATRICIA SILVA,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>HOME DEPOT U.S.A., INC., and  )<br>SEDGWICK CLAIMS  )<br>MANAGEMENT SERVICES, INC.,  )<br>)<br>Defendants.  ) | **Civil Action No. 1:11-cv-12129** |

# OPPOSITION OF THE PLAINTIFF, PATRICIA SILVA, TO THE MOTION TO DISMISS FILED BY THE DEFENDANT, SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., AND CROSS-MOTION TO STRIKE ALL UNSUPPORTED STATEMENTS OF FACT ASSERTED BY THE MOVING PARTY

The plaintiff, Patricia Silva, hereby submits her within opposition to the motion to dismiss under FRCP 12(b)(6) filed by the defendant Sedgwick Claims Management Services, Inc. ("Sedgwick") The plaintiff also moves by way of a cross- motion to strike all unsupported factual allegations made by Sedgwick in its motion[1].

---

[1] Having made numerous (unsupported) factual allegations in its motion to dismiss and otherwise introduced matters outside the pleadings, Sedgwick's motion to dismiss is in reality a summary judgment motion masquerading as a motion under Rule 12(b)(6). It is inappropriate for Sedgwick to rely on alleged statements of fact it claims are true in a 12(b)(6) motion, especially when such statements run contrary to allegations made in the complaint. It is even more inappropriate for Sedgwick to assert the truth of any facts which are unsupported by way of declarations or documents. Sedgwick knows that if it did include declarations or affidavits, its motion would be converted to a summary judgment motion by operation of FRCP 12(d), at which time the plaintiff would seek discovery pursuant to Rule 56(d)(1), (2) and otherwise request that the Court defer a hearing on any such motion until discovery has been obtained. Sedgwick's attempt to obtain relief under Rule 56 under the guise of a 12(b)(6) motion should not be permitted. Furthermore, Sedgwick's unsupported statements of fact must be stricken as per the plaintiff's cross-claim.

In a nutshell, the vast majority of the grounds asserted by Sedgwick in its motion are both moot and meaningless as the plaintiff previously dismissed her claim against Sedgwick under M.G.L. c.176D. Nothing Sedgwick asserts in nits motion to dismiss with respect to G.L. c.176D is relevant anymore as that claim is dismissed. As further grounds, the plaintiff states as follows:

## LEGAL STANDARD

The issue at hand is whether the plaintiff has pled a cause of action under Rule 12(b)(6).  Sedgwick  is incorrect to state that Massachusetts has adopted a "heightened" standard for motions to dismiss. In truth, the standard has been clarified, not heightened. In the recent case of *Iannacchino v. Ford Motor Company*, 451 Mass. 623 (2008), the Supreme Judicial Court adopted a clarified standard for determining whether a complaint states a claim upon which relief can be granted in the context of a motion under rule 12(b)(6). The Court followed the lead of the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007), announcing that henceforth:

> While a complaint attacked by a ... motion to dismiss does not need detailed factual allegations ...a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions.... Factual allegations must be enough to raise a right to relief above the speculative level ... [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...." *Id.* at 1964–1965. What is required at the pleading stage are factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief, in order to "reflect[ ] the threshold requirement of [Fed.R.Civ.P.] 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.' " *Id.* at 1966.

*Iannacchino*, *supra*, at 636, quoting *Bell Atlantic Corp., supra*, at 1967.

The question is whether the plaintiff has made factual allegations plausibly suggesting entitlement to relief. As will be seen below, the plaintiff has met her burden to articulate a set of facts sufficient to survive a motion to dismiss under Rule 12(b)(6).

## FACTS

1. Plaintiff alleges that on or about July 6, 2010, while she was in a Home Depot store located in Marlboro, Massachusetts, she slipped and fell on a foreign substance on the floor. See Exhibit A to Petition for Removal (hereinafter "Complaint"), at ¶6.

2. The plaintiff further alleges that on August 29, 2011, an MRI of her spine taken on that day showed that she suffered a disc protrusion at L3, a small centrally located disc herniation at L4-L5, and a small right disc herniation at L5-S1. See Complaint, at ¶15. The plaintiff alleges the injuries listed above are attributable to the slip and fall which occurred in the Home Depot store on July 6, 2010. *Id.*

3. The plaintiff further alleges that as a result of Home Depot's negligence, the plaintiff was caused to suffer physical harm and injuries, as well as pain and suffering and ongoing disability, and has been caused to suffer medical bills, expenses, and a loss of earning capacity. See Complaint, at ¶41.

4. The plaintiff further alleges that Sedgwick is an Illinois corporation which specializes in managing claims, including personal injury claims, brought against its customers, one of whom is Home Depot. See Complaint, at ¶3.

5. The plaintiff further alleges that Sedgwick transacted business in Massachusetts. See Complaint, at ¶4.

6. The plaintiff further alleges that Home Depot contracted with Sedgwick to manage, handle, and adjust personal injury claims. See Complaint, at ¶17.

7. The plaintiff further alleges a contract between Home Depot and Sedgwick with respect to handling personal injury liability claims and remains in effect to this day. See Complaint, at ¶17.

8. The plaintiff further alleges that Sedgwick received a request that Home Depot retain the store video footage taken on July 6, 2010 for possible use in connection with the plaintiff's claim. On October 18, 2010, Sedgwick stated in an email "We have checked for store video of the incident in question and none was found." Complaint, at ¶19.

9. The plaintiff further alleges that she had multiple conversations with one of the (numerous) Sedgwick adjusters assigned to this claim, a Mr. Sinclair. In each of those conversations, which occurred during the summer of 2010, Mr. Sinclair informed the plaintiff either that the manager did not have time to review the store video or that he refused to do so. See Complaint, at ¶20.

10. The plaintiff further alleges that Sedgwick's attempt to persuade the plaintiff that no store video exists is an act of bad faith which is an unfair or deceptive act or practice within the meaning of M.G.L. c.93A.

11. The plaintiff further alleges that on February 26, 2011, the plaintiff sent a demand letter with a complete demand package to Scott Cristiano, who was at least the second Sedgwick adjuster assigned to this claim. See Complaint, at ¶21.

12. The plaintiff further alleges that subsequent to February 26, 2011, the plaintiff's claim was transferred to a Mary DeWitt at Sedgwick for handling. Subsequently, the claim was transferred from Mary Dewitt back to Scott Cristiano. See Complaint, at ¶21.

13. The plaintiff further alleges that on February 28, 2011, the plaintiff sent a copy of the demand package via email in a pdf format to Mr. Cristiano. Mr. Cristiano responded

on March 8th that he needed more than two weeks to respond to the demand letter as requested because he had all-day seminars to attend "on Wednesday and Thursday". Mr. Cristiano asked for an additional two weeks. The plaintiff offered to split the difference and get a response in three weeks. Mr. Cristiano responded on March 8th, stating in an email to the plaintiff that "I will do what I can to attempt to have a number for you by the end of next week. I can't guarantee it, but I will try my best. I'll let you know if I foresee any hang-ups that might prevent this as I get into the medical records. Sound good?" See Complaint, at ¶21.

14. The plaintiff further alleges that her response (through counsel) to Mr. Cristiano on March 8th was "Sounds good. If you get jammed for time, there isn't much I can do on my end which would be helpful to you. If you can keep me informed, I can relay your progress to the client and hopefully, that will be enough. My issue here is I have a client who is anxious to get moving if our negotiations are not fruitful, but I will do all I can on my end as I believe you are being forthright with me. I appreciate your keeping me informed." See Complaint, at ¶23.

15. The plaintiff further alleges that on March 28th, more than 30 days after the demand letter was sent, the plaintiff (though counsel) emailed Mr. Cristiano, stating "k]indly advise me whether you have responded to my client's demand letter in the above matter." On March 29th, the plaintiff sent to Mr. Cristiano via U.S. Mail, fax, and email a copy of the plaintiff's recent prescriptions supplementing her claim. On March 31st, the plaintiff asked Mr. Cristiano in an email what the status of his evaluation was. Mr. Cristiano's email system responded that he was out of the office on March 31st. On April 4th, the plaintiff emailed Mr. Cristiano and stated "Unfortunately, I have not heard from you for some in connection with the above matter. Before the claim goes into suit,

however, I now need to make a claim against Sedgwick directly for unfair or deceptive acts or practices in connection with the claim settlement process and go after both Sedgwick and Home Depot. You can expect a letter from me shortly." On April 4th, a mere eight minutes after the above email was sent, Mr. Cristiano finally responded and stated in an email to the plaintiff that "I am no longer handling this file. The claim has been reassigned to Mary Dewitt. Ms. Dewitt can be reached at the same number that you had for me. After further review, there were some additional questions in regards to liability that were needing to be followed up on. We cannot extend an offer until all aspects of liability have been explored." See Complaint, at ¶25.

16. The plaintiff further alleges that also on April 4, 2011, the plaintiff responded to Mr. Cristiano and stated that "I had no knowledge of any new adjuster, nor do I have any knowledge of the particular questions the new adjuster needed to follow up on. If the new adjuster wants to contact me, she is free to do so. I am all done chasing down unresponsive Sedgwick adjusters." See Complaint, at ¶26.

17. The plaintiff further alleges that Sedgwick did not articulate what questions it had, and that Sedgwick did not follow up on the allegedly unanswered liability questions or otherwise proceed to process the claim or the demand. She further alleges that if there were any doubt that Sedgwick was attempting to adjust the plaintiff's claim in good faith, all such doubt evaporated when Sedgwick transferred the file back to Mary Dewitt, no less than the third adjuster to handle the plaintiff's claim. See Complaint, at ¶27.

18. The plaintiff further alleges that on April 5th, the plaintiff (through counsel) tried to call Ms. DeWitt. However, Sedgwick's phone system did not have a Mary Dewitt in its database. The operator at Sedgwick transferred plaintiff's (counsel's) call to a Garrett Kaplan, who was said to have responsibility for cases in Massachusetts. Plaintiff then

emailed Mr. Kaplan on April 5th as follows: "As per my voicemail message to you a few minutes ago, I represent Patricia Silva in the above matter. Scott Cristiano said in a recent email to me he was no longer handling this claim and said that a Mary DeWitt was handling the claim. However, the automated Sedgwick phone system did not recognize a Mary DeWitt, so I called the operator, who likewise could not find a Mary DeWitt in the system. The operator transferred me to you based on the claim arising in Massachusetts. Kindly let me know if you are the person in charge of the above claim and if you are not, kindly tell me who is." The plaintiff never heard from Mr. Kaplan. See Complaint, at ¶28.

19.     Plaintiff's complaint further alleges that also on April 5th, plaintiff emailed Ms. Dewitt, stating "I represent Patricia Silva in the above matter. Kindly contact me at our convenience. Scott Cristiano said you are now handling this claim." Ms. DeWitt called the plaintiff on April 5th to say she was the new adjuster, not Garrett Kaplan. See Complaint, at ¶29.

20.     Plaintiff's complaint further alleges that on April 6th, the plaintiff emailed Ms. DeWitt, stating "[a]s per our phone conversation yesterday, kindly contact me regarding this claim at your earliest convenience after you have reviewed it. The prior adjuster mentioned something vague about liability questions he had but he never articulated any such questions to me. I am concerned that this claim has now been transferred to three different adjusters with no prior notice to me. Moreover, about 6 weeks has gone by without a response by Sedgwick Claims. While I am concerned with what is going on over there, I hope you get up to speed on this claim quickly and move forward. It is not my custom and practice to let demand letters sit unresponded to for an extended period of time but out of good will and a desire to give you time to do your job, I am willing to wait a short period of time. If you have questions about the claim, please get them to me

promptly." On April 6th, the plaintiff received an auto-reply from Ms. DeWitt's email account which stated "I will be out of the office on April 7 & 8. I will return on April 11." See Complaint, at ¶30.

21. Plaintiff's complaint further alleges that Sedgwick's adjusters continued with delay tactics from April of 2011 through June of 2011 and continuing. See Complaint, at ¶32.

22. Plaintiff's complaint further alleges that Sedgwick's tactic of repeatedly assigning and re-assigning the plaintiff's claim to different adjusters, failing to communicate with the plaintiff's counsel regarding the plaintiff's claim, refusing to communicate substantively with plaintiff's counsel at all over a period of over two months, as well as Sedgwick's failure to make a reasonable offer of settlement constitutes an unfair and deceptive act or practice as defined by M.G.L. c.93A, §2(a) and the regulations promulgated thereunder. See Complaint, at ¶33.

23. Plaintiff's complaint further alleges that Sedgwick repeatedly transferred responsibility for the plaintiff's claim to new adjusters. Sedgwick failed to articulate what questions it has as to liability which can be answered by the plaintiff. Sedgwick did not request any further information regarding the plaintiff's theory of liability or her damages. Sedgwick failed for a period of many months to communicate with the plaintiff in any way. Sedgwick's refusal and failure to communicate is wrongful and has the effect of insulating Home Depot from having to respond to or otherwise settle the plaintiff's claim. Sedgwick's failure to communicate has had the effect of illegally stalling the resolution of the plaintiff's claim. See Complaint, at ¶35.

24. Plaintiff's complaint further alleges that on June 28, 2011 she served a written demand for relief against Sedgwick pursuant to M.G.L. c.93A. See Complaint, at ¶36.

25.     Plaintiff's complaint further alleges that a copy of the plaintiff's demand letter was attached to the plaintiff's complaint at Exhibit 1. See Complaint, at ¶36.

26.     The plaintiff's written demand for relief outlines in as much detail as is alleged in the complaint the nature and extent of "Sedgwick's tactic of repeatedly reassigning this claim to different adjusters and failing to communicate with [plaintiff's counsel] is untenable and unfounded." See demand letter attached to the Complaint, at p.6, last ¶.

27.     Plaintiff's complaint further alleges that Sedgwick's conduct as alleged in the complaint was and is an unfair or deceptive act or practice within the meaning of c.93A. See Complaint, at ¶45.

28.     Plaintiff's complaint further alleges that Sedgwick's conduct as alleged herein was willful or knowing and represented an intentional course of conduct designed to thwart, stall, and frustrate the plaintiff and otherwise delay the resolution of her personal injury claim as much as possible. See Complaint, at ¶46.

29.     Plaintiff's complaint further alleges that Sedgwick's actions were made in bad faith with knowledge or reason to know that the acts and practices complained of by the plaintiff violated the provisions of M.G.L. c.93A, §§2, 9. See Complaint, at ¶47.

## DISCUSSION

As mentioned above, Sedgwick's memorandum is moot insofar as it claims it is entitled to a dismissal because Sedgwick is not in the business of insurance within the meaning of M.G.L. c.176D. That is because the plaintiff's claim against Sedgwick under c.176D has been dismissed. Virtually all of Sedgwick's memorandum is concerned with that now dismissed claim by the plaintiff. Sedgwick fails to mention, respond to, or

otherwise address that the plaintiff also alleges an independent basis for liability under M.G.L. c.93A separate and distinct from c.176D. The facts upon which the plaintiff's independent claim under c.93A are based are set forth above, and amply allege in substance that Sedgwick has engaged in the tactics of delay, failed to communicate, repeatedly reassigned the claim to different adjusters, all of which were designed to frustrate and exhaust the plaintiff. Sedgwick is further alleged to have lied about the existence of store video which might potentially contain critical information about the cause of the plaintiff's slip and fall. Where, as here, Sedgwick has not addressed or even acknowledged the fact that the plaintiff alleged a separate and distinct basis upon which to impose liability under c.93A, Sedgwick's motion must be denied.

Against this factual backdrop, the law states that "ordinarily the existence of unfair or deceptive acts or practices 'must be determined from the circumstances of each case'". *Spence v. Boston Edison Company*, 390 Mass. 604, 615 (1983), quoting from *Don Lorenz, Inc., v. Northampton National Bank*, 6 Mass.App.Ct. 933 (1978) (further citations omitted). "Courts have deliberately avoided setting down a clear definition of conduct constituting a violation of G.L. c.93A." *Spence, supra*, at 616, citing *Whitinsville Plaza, Inc., Kotseas*, 378 Mass. 85, at 100 (1979). Looking to the facts of the plaintiff's claim, she alleges, inter alia, that Sedgwick lied about a store video. It is beyond doubt that misrepresentation is actionable under M.G.L. c.93A ("A practice or act will be unfair under G. L. c. 93A, §2, if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people." *Heller Finance. v. Insurance Co. of North America*, 410 Mass. 400 , 408 (1991)).

Misrepresentation meets the common law criteria. Therefore, Sedgwick's motion to dismiss should be denied.

Furthermore, even if Sedgwick had taken the position in its motion that assigning new adjusters to the plaintiff's claim is not illegal, such an argument would be insufficient to permit Sedgwick to be dismissed from the case. The law states:

> Legality of underlying conduct is not necessarily a defense to a claim under c. 93A. See *Schubach v.Household Fin. Corp.,* 375 Mass. 133, 137, 376 N.E.2d 140 (1978). Chapter 93A does not define what constitutes an "unfair or deceptive act or practice." Such a definition would be impossible, because, as the Appeals Court aptly noted, "[t]here is no limit to human inventiveness in this field." *Levings v. Forbes & Wallace, Inc.,* 8Mass.App.Ct. 498, 503, 396 N.E.2d 149 (1979), quoting H.R. Conf. Rep. No. 1142, 63d Cong., 2d Sess. (1914). Although G.L. c. 93A, § 2(*b*), states that courts are to be guided by the Federal Trade Commission and Federal court interpretations of the Federal Trade Commission Act, *PMP Assocs., Inc. v. Globe Newspaper Co.,* 366 Mass. 593, 595, 321 N.E.2d 915 (1975), unfair or deceptive conduct is best discerned "from the circumstances of each case." *Commonwealth v. DeCotis, supra* at 242, 316 N.E.2d 748. See *Kerlinsky v. Fidelity & Deposit Co.,* 690 F.Supp. 1112, 1119 (D.Mass.1987), aff'd, 843 F.2d 1383 (1st Cir.1988) ("[I]t is not the definition of an unfair act which controls but the context-the circumstances to which that single definition is applied"). Even if the defendants had the right to foreclose, as the judge found, it was clearly unfair, within the meaning of c. 93A, to use that right for a reason so obviously against public policy. Cf. *Anthony's Pier Four, Inc. v. HBC Assocs. .,* 411 Mass. 451, 473, 476, 583 N.E.2d 806 (1991) (use of discretionary contract right to "forc[e] financial concessions" was unfair or deceptive act violating c. 93A).

*Kattar v. Demoulas*, 433 Mass. 1, 13-34 (2000)

Among the factual issues the plaintiff wants to investigate in this case are: whether Sedgwick employs a pattern of frustrating claimants by repeatedly re-assigning

11

their claims for no legitimate reason; whether Sedgwick uses this technique to exhaust claimants and make them go away for a pittance; whether Sedgwick's management is aware of this practice or whether they condone it; whether Sedgwick's business model is predicated on engaging in the kinds of delay tactics alleged by the plaintiff for their clients such as Home Depot; and whether Sedgwick intentionally and willfully fails to respond to claimants on the theory that since they are not an insurer, they are beyond the reach of c.176D and are otherwise free to engage in the kinds of conduct made illegal when used by insurance companies. Sedgwick appears anxious to avoid any such questions being asked of them and seeks to avoid scrutiny by bringing a frivolous motion to dismiss even though the plaintiff's complaint alleges conduct which is unfair, oppressive, and which is allegedly designed to inhibit, frustrate, and delay.

Finally, 940 CMR 3:16 contains the regulations promulgated by the Office of the Massachusetts Attorney General. The regulations state in pertinent part that "[a]n act or practice is a violation of M.G.L. c.93A, §2 if: (1) [i]t is oppressive or otherwise unconscionable in any respect…" The conduct alleged by the plaintiff in her complaint, if true, is either oppressive or unconscionable within the meaning of the cited regulation. Again, "the circumstances of each case must be analyzed, and unfairness is to be measured not simply by determining whether particular conduct is lawful apart from G.L. c.93A but also by analyzing the effect of the conduct on the public." *Schubach v. Household Finance Corporation*, 375 Mass. 133, 137 (1978). Where, as here, the plaintiff alleges conduct which is designed to discourage, delay, frustrate, and misrepresent, the plaintiff has articulated a legitimate and legally sufficient claim under c.93A. Therefore, for this additional reason, Sedgwick's motion should be denied.

**CROSS MOTION TO STRIKE**

The plaintiff moves by way of a cross-motion to strike all factual assertions made by Sedgwick which are unsupported in its motion to dismiss. Looking to Sedgwick's memorandum in support of its motion to dismiss, without any support in the pleadings whatsoever, Sedgwick claims in its memorandum that it is not engaged in the business of insurance (memo, p.3), that it does not charge premiums (memo, p.3), and that it is not contractually obligated to pay claims on behalf of Home Depot (memo, p.3). Sedgwick further alleges as fact that it does not assume the risk for Home Depot's wrongful conduct (memo, p.3-4), that it does not provide insurance contracts (memo, p.4), and that Sedgwick is not required to be registered with or regulated by the Massachusetts Division of Insurance (memo, p.4). Sedgwick also claims without any support in the record that Home Depot controls the litigation brought against it (memo, p.5), and that Sedgwick investigates and provides recommendations for Home Depot (memo, p.5-6). Sedgwick also claims that it functions solely as a claims management department on behalf of Home Depot and has no contractual obligation to settle claims against Home Depot (memo, p.7). All of the above statements of fact must be stricken because 1) they are not appropriate in a motion to dismiss under Rule 12(b)(6), and 2) because they are unsupported in the record before the Court. Moreover, it is the gravamen of the plaintiff's complaint which controls in a Rule 12(b)(6) motion, not the moving party's litany of unsupported facts in support of a motion served under that rule. In summary, where, as here, Sedgwick's motion is predicated on unsupported facts, and where, as here, Sedgwick's alleged facts are not taken from the pleading at issue (the plaintiff's complaint), and where the plaintiff has alleged a pattern of unfair or deceptive conduct as

well as an intentional misrepresentation concerning store video, it is apparent that the plaintiff's cross-motion to strike ought to be allowed.

## Summary

The allegations made by the plaintiff in her complaint set out a course of conduct and a chain of events which, if true, articulates a sufficient and adequate basis upon which to impose liability under M.G.L. c.93A against Sedgwick. Sedgwick's motion is improperly submitted as a Rule 12(b)(6) motion because it relies on facts outside the pleadings, facts which are completely unsupported in the record before this court. Therefore, the plaintiff respectfully requests that this Court allow the plaintiff's cross-motion to strike and deny Sedgwick's motion to dismiss.

Respectfully submitted,
The plaintiff,
Patricia Silva,
By her attorney,

  /s/ Alan D. Hoch
Alan D. Hoch, BBO #548645
Alan D. Hoch, Esq.
106 Peabody Street
 Groton, MA 01450
(978) 448-0409
(fax) (978) 448-3733

Dated: November 27, 2012            Email: alan@alanhochlaw.com

**CERTIFICATE OF SERVICE**

I, Alan D. Hoch, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants, on this 27th day of November, 2012.

    /s/ Alan D. Hoch_____
    Alan D. Hoch